UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                            :

RYE RIDGE CORP., ET AL.,              :

                           Plaintiffs, :

                                     :                20 Civ. 7132 (LGS)

               -against-              :

                                     :            __OPINION AND ORDER__

THE CINCINNATI INSURANCE COMPANY,  :

                           Defendant. :
---------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs Rye Ridge Corp. and Haromar, Inc., bring this putative class action to seek insurance payments for business losses allegedly resulting from COVID-19 and government restrictions during the COVID-19 pandemic. Plaintiffs assert claims for breach of contract, breach of the covenant of good faith and fair dealing, deceptive business practices under N.Y. Gen. Bus. Law § 349, *et seq.*, unfair trade practices under Conn. Gen. Stat. § 42-110a, *et seq.*, and declaratory relief. Defendant, the Cincinnati Insurance Company, moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

## I.     BACKGROUND

       The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

       Plaintiff Rye Ridge Corp. owns and conducts business as a restaurant called Rye Ridge Deli, in Rye Brook, New York. Plaintiff Haromar, Inc., owns and conducts business as another restaurant called Rye Ridge Deli, in Stamford, Connecticut. The Rye Ridge Delis purchased

insurance policies (the "Policies") from Defendant.  The Policies provide coverage from December 2, 2019, to December 2, 2022, and are identical in material terms.

The Policies provide "Business Income" coverage for certain income losses sustained due to direct "accidental physical loss or accidental physical damage," subject to various exclusions and limitations not relevant here.  The Policies also provide "Extra Expense" coverage for expenses sustained following physical loss or physical damage and until the premises are restored.  They provide "Civil Authority" coverage when property other than Plaintiffs' property suffers damage that leads to an action of civil authority prohibiting access to Plaintiffs' property.  And, they provide "Ingress and Egress" coverage if Plaintiffs are unable to access ingress or egress at their property due to physical damage or physical loss at a neighboring property and there is no prohibition of access by civil authority.

From March 2020 onwards, Plaintiffs suspended business operations following orders issued by the States of New York and Connecticut (the "Civil Orders"), which initially required restaurants to close their dine-in facilities and permitted operation only for take-out and delivery orders.  The Civil Orders were later modified to permit limited outdoor dining and then limited indoor dining.  Plaintiffs suffered business losses as a result.

Plaintiffs each made claims for coverage from Defendant for the losses resulting from, and additional expenses related to, the COVID-19 pandemic.  Defendant denied coverage on both claims.

## II.     STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual

allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand a motion

to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at

678.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint

must "nudge[]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at

570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests

through factual allegations sufficient 'to raise a right to relief above the speculative level.'"

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550

U.S. at 555).

III.     **DISCUSSION**

  A.      **Breach of Contract, New York Law**

     Under principles of New York contract interpretation,[1] "the court's initial task is to

attempt to ascertain the parties' intent from the language of the insurance contract itself . . .

constru[ing] the policy as a whole; all pertinent provisions of the policy should be given

meaning, with due regard to the subject matter that is being insured and the purpose of the entire

contract."  *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67, 74 (1st Dep't 2020) (internal

---

[1] The Policies do not contain a choice of law provision. The parties agree that New York and
Connecticut law do not meaningfully differ as to basic principles of contract interpretation and
rely on New York law in their memoranda of law.  Accordingly, the breach of contract claim is
reviewed under New York law.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d
Cir. 2009) (applying New York law where the parties' memoranda of law assume that New York
law governed the issues); *accord N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of
Am.*, 485 F. Supp. 3d 398, 404 n.5 (S.D.N.Y. 2020).

citation omitted).  Courts must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation."  *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 96 N.E.3d 209, 216 (N.Y. 2018).  "[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists." *Chiarello ex rel. Chiarello v. Rio*, 59 N.Y.S.3d 129, 131 (2d Dep't 2017) (alteration in original). "[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy."  *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (internal quotation marks and citations omitted).

## B.    Analysis

The Complaint fails to allege that there was a breach of contract because it does not make any factual allegations that Plaintiffs' property or any other property suffered physical loss or damage.  The Policies provide coverage for expenses and loss of income sustained during the suspension of business due to accidental physical loss or accidental physical damage to property. The key word in the Policies is "physical," which in this context is unambiguous.  The Complaint makes conclusory allegations that Plaintiffs' properties experienced physical loss and/or physical damage from the presence of COVID-19.  But the Complaint alleges no facts to suggest that Plaintiffs' properties suffered any physical loss or damage.  Without physical loss or damage, the Policies do not provide coverage, and denial of coverage is not a breach of contract. The various types of coverage provided by the Policies are discussed below.

### a.  Business Income Coverage

Plaintiffs seek coverage under the "Business Income" provisions of the Policies, which provide coverage for loss of certain income:

> We will pay for the actual loss of "Business Income" . . . you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

The Policies define "Covered Causes of Loss" as "direct 'loss,'" subject to various exclusions and limitations not relevant here. The Policies define "Loss" as "accidental physical loss or accidental physical damage."

The Complaint alleges that COVID-19 caused a "direct physical loss" of Plaintiffs' business premises, thus triggering the Policies' Business Income coverage. The Complaint fails to state a claim because, despite this conclusory allegation, the Complaint pleads no facts to suggest that there was a "physical loss or accidental physical damage" to the insured property as the Policies require. *See RSVT Holdings, LLC v. Main St. Am. Assur. Co.*, 25 N.Y.S.3d 712, 714 (3d Dep't 2016) (noting that policy covering "direct physical loss of or damage to" provided coverage only for "direct damage to plaintiffs' property"); *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 751 N.Y.S.2d 4, 8 (1st Dep't 2002) (same); *see also* Transcript of Show Cause Hearing at 15, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020) (in declining to provide business interruption coverage for shutdowns resulting from the Civil Orders, noting "New York law is clear that this kind of business interruption needs some damage to the property to prohibit [a person] from going [there]"); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (construing New York law and the phrase "direct physical loss or damage" to require that "the interruption in business must be caused by some physical problem with the covered property"). The requirement of physical damage is not satisfied by the mere loss of use. *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which

modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Roundabout Theatre*, 751 N.Y.S.2d at 8.

Plaintiffs claim that the Policies are ambiguous because they cover both "loss" and "damage." Plaintiffs argue that "loss" and "damage" cannot mean the same thing, as New York law requires contracts to be interpreted to give each term effect. While that principle is true, it is beside the point. The Policies in this case require that any qualifying "loss" or "damage" be "physical."

Plaintiffs argue that *Roundabout Theatre* is factually distinct because there was no risk of further damage to the insured premises after the triggering event in *Roundabout Theatre,* whereas COVID-19 "posed an imminent threat of harm to Plaintiffs' property." This distinction is inapt; the relevant comparison to *Roundabout Theatre* is that there was no physical damage to the insured premises in that case just as the Complaint does not allege any physical damage to the insured premises in this case.

Plaintiffs cite a case addressing the physical loss of fuel to argue that loss of access can constitute a "loss." That case is unhelpful to Plaintiffs because the insured physically lost a tangible item, fuel, when it was stolen. *See AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 187 F. Supp. 3d 428, 439 (S.D.N.Y. 2016). The insured did not merely lose access to the fuel; the fuel was entirely and physically lost due to theft. *Id.*

Plaintiffs also argue that "loss" does not require structural alteration. This argument misses the point that, under New York law, "loss" as it is used in the Policies does not mean loss of use; instead there must be some physical damage to the premises. For example, Plaintiffs

argue that *Newman Myers* "does not require that the physical loss or damage be tangible, structural or even visible." But each case reviewed in *Newman Myers* involved "some compromise to the physical integrity of the workplace" by "either a physical change for the worse in the premises" constituting a "form of physical damage" or a risk to the premises' "physical integrity." 17 F. Supp. 3d at 330. In drawing those conclusions, *Newman Myers* also emphasized that none of the cases it reviewed applied New York law. *Id.* The other cases Plaintiffs cite are not persuasive because they do not interpret or apply New York law. *See, e.g.*, *Manpower, Inc. v. Ins. Co. of the State of Pa.*, No. 08 Civ. 85, 2009 WL 3738099, at *2 (E.D. Wis. Nov. 3, 2009) (applying Wisconsin law); *Mellin v. N. Sec. Ins. Co.*, 115 A.3d 799, 802 (N.H. 2015) (applying New Hampshire law).

Finally, Plaintiffs' argument that there is no virus exclusion in the Policies is irrelevant because the Complaint does not meet its initial burden of pleading that the Policies apply. *See Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612, 2020 WL 7321405, at *4 (S.D.N.Y. Dec. 11, 2020) (where the plaintiff failed to plead that it met the requirements for coverage, the court did not reach whether any exclusions applied).

### b. Extra Expense Coverage

The Policies' "Extra Expense" coverage applies to expenses incurred during a period of restoration of the premises following a "loss" of the covered property. Because, as described above, the Complaint does not allege a "loss" under the Policies, the Complaint fails to state a claim for Extra Expense coverage.

### c. Civil Authority Coverage

The Policies' "Civil Authority" coverage applies to losses sustained when a property other than insured property suffers direct accidental physical loss or accidental physical damage,

and due to that damage, a civil authority prohibits access to Plaintiffs' premises.  The Complaint alleges the same loss for other properties as it does for the insured properties -- that the presence of COVID-19 caused loss and/or damage.  Because, as described above, the Complaint does not allege physical loss or physical damage, the Complaint fails to state a claim for Civil Authority coverage.

In addition, the Complaint fails to allege that a civil authority prohibited access to Plaintiffs' premises.  At various times the Complaint refers to the Civil Orders as "shelter in place" orders and alleges that the Civil Orders required "customers, employees, and members of the public to shelter in place."  But the Complaint notes that restaurants were "permitted to open for purposes of fulfillment of take-out and delivery orders" and that the Civil Orders were subsequently modified to allow "certain restaurants to serve diners outdoors in a limited and heavily regulated manner."  Because the Complaint alleges that restaurants were permitted to open, it does not allege that access to Plaintiffs' premises was prohibited.

### d.  Ingress and Egress Coverage

The Policies' "Ingress and Egress" coverage applies where loss of Business Income or necessary Extra Expenses are sustained because of "the prevention of existing ingress or egress at a 'premises' . . . due to direct 'loss' by a Covered Cause of Loss at a location contiguous to such 'premises.'"  Because, as described above, the Complaint does not allege facts showing a physical loss as required by the Policies, the Complaint fails to state a claim for Ingress and Egress coverage.

### C.  Other Claims

The remaining claims in the Complaint -- breach of the covenant of good faith and fair dealing, deceptive business practices under N.Y. Gen. Bus. Law § 349, *et seq.*, unfair trade

practices under Conn. Gen. Stat. § 42-110a, *et seq.*, and declaratory relief -- all rest on the allegedly improper denial of Plaintiffs' eligibility for coverage.  The claims asserting improper denial based on an inadequate investigation allege that the "nature of Defendant's denial" of the insurance claims indicates a lack of a good faith or reasonable investigation.  For the reasons stated above, the Complaint does not adequately allege that Plaintiffs were eligible for coverage. Because the Complaint fails to plead that Plaintiffs were eligible for coverage, the remaining claims are not well pleaded.

### D.  Leave to Replead

Plaintiffs seek leave to amend their Complaint.  Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The Court assumes that leave to amend would be futile because Plaintiffs presumably would have pleaded facts showing physical loss or damage had they been able to do so. Nevertheless, if Plaintiffs have additional facts that they believe would cure the deficiencies identified in this Opinion, they shall file a letter to the Court seeking leave to replead and file a proposed amended complaint marked to show changes from the current Complaint, no later than May 7, 2021.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Plaintiffs'

request for oral argument is denied as moot.  Plaintiffs may, but need not, seek leave to replead as

set forth above.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 25.

Dated: April 23, 2021
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**